1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SCOTT BURNS,

11              Petitioner,              No. CIV S-05-2094 LKK CHS P

12        vs.

13   A.P. KANE,   Warden

14              Respondent.        FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.    INTRODUCTION

17              Petitioner Scott Burns is a state prisoner proceeding pro se with a petition for a

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the May 28, 2004,

19   decision by the Board of Prison Terms (now the Board of Parole Hearings and hereinafter Board)

20   finding him unsuitable for parole.  Petitioner argues that the Board's determination violated his

21   right to due process.  Upon careful consideration of the record and the applicable law, the

22   undersigned will recommend that this petition for habeas corpus relief be denied.

23   II.   FACTUAL AND PROCEDURAL BACKGROUND

24        A.    Facts

25              The Board recited the facts of petitioner's commitment offense as follows:

26              PRESIDING COMMISSIONER RISEN: Regarding the

                                    1

commitment offense, I'm going to incorporate by reference the
Statement of Facts from the District Court of Appeals Opinion,
page two to page four.  I'm going to read the summary of the crime
basically into the record from the October 2003 Board report.

> "In June of - - On June 7th, 1987, early in the afternoon,
> prisoner Burns left his campsite, went to the victim's
> campsite and began drinking with him.  Later that
> afternoon, prisoner Burns took Robert Smith's, the victim,
> pistol and shot him twice in the head."

It should be noted from his transcript last year, he indicated the
victim was asleep at the time he was shot.

> "Burns then drove Smith's pickup truck to his own
> campsite and later returned the pickup truck to Smith's
> campsite.  On the way to Downieville Sheriff's Office,
> spelling, D-O-W-N-I-E-V-I-L-L-E, to report the discovery
> of a dead body, Burns had a friend stop the van and
> prisoner Burns threw the weapon and other items down a
> ravine.  After reporting the discovery of the body, Burns
> was later arrested for burglary and then murder."

/////

Answer, Exhibit 2 at 7-8.

On September 28, 1988, petitioner was found guilty of second degree murder and
committed to state prison for a term of 17 years to life.  Answer, Ex. 1.

The Board held a Subsequent Parol Consideration Hearing for petitioner on May
28, 2004.  Answer, Ex. 2 at 2.  Petitioner waived his right to be represented by counsel and to be
present at the hearing.  Id. at 5.  At the conclusion of that hearing the Board found petitioner
unsuitable for parole.  Id. at 18-25.

B.    Habeas Review

Petitioner filed a petition for writ of habeas corpus in the Sierra County Superior
Court.  That petition was denied in a reasoned opinion on April 6, 2005.  Answer, Ex. 3.
Petitioner then filed a petition with the California Court of Appeal.  That petition was summarily
denied on June 23, 2005.  Answer, Ex. 4.  Petitioner then petitioned the California Supreme
Court on July 11, 2005.  Answer, Ex. 5 at 3.  That petition was summarily denied on September
21, 2005.  Id. at 2.  Finally petitioner filed this federal petition on October 19, 2005.

1    III.     <u>APPLICABLE STANDARD OF HABEAS CORPUS REVIEW</u>

2       A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

3 some transgression of federal law binding on the state courts. <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860,

4 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v.</u>

5 <u>Isaac</u>, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the

6 interpretation or application of state law. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991);

7 <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085. Habeas

8 corpus cannot be utilized to try state issues <u>de novo</u>. <u>Milton v. Wainwright</u>, 407 U.S. 371, 377

9 (1972).

10       This action is governed by the Antiterrorism and Effective Death Penalty Act of

11 1996 ("AEDPA"). <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d

12 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting

13 habeas corpus relief:

14       An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court shall

15 not be granted with respect to any claim that was adjudicated on
the merits in State court proceedings unless the adjudication of the

16 claim -

17       (1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law, as

18 determined by the Supreme Court of the United States; or

19       (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the

20 State court proceeding.

21 28 U.S.C. § 2254(d). <u>See</u> <u>also</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Williams v.</u>

22 <u>Taylor</u>, 529 U.S. 362 (2000); <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1229 (9th Cir. 2001). The

23 court looks to the last reasoned state court decision as the basis for the state court judgment.

24 <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004).

25 /////

26 /////

3

IV.     DISCUSSION OF PETITIONER'S CLAIM

        All of petitioner's arguments rely on a claim of the denial of Constitutional due process.

/////

      1)     Description of Claim

        In finding petitioner unsuitable for parole the Board relied upon: a) the circumstances of the commitment offense, b) petitioner's unstable social history, c) his failure to upgrade vocationally, d) his failure to sufficiently participate in self-help, e) his institutional behavior, and f) his lack of an adequate parole plan.

        Petitioner argues that the Board's determination was not supported by some evidence and was based on the unchanging circumstances of his commitment offense. Petition at 19-34. Petitioner argues that the Board's decision therefore violated his liberty interest in parole and his right to due process. Id. at 27.

/////

      2)     Applicable Law

        The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging due process violations must first demonstrate that he or she was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).

        A protected liberty interest may arise from either the Due Process Clause of the United States Constitution or state laws. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).

1  However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that

2  parole release will be granted' when or unless certain designated findings are made, and thereby

3  gives rise to a constitutional liberty interest." McQuillion, 306 F.3d at 901 (quoting Greenholtz

4  v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)).  In this regard, it is clearly established that

5  California's parole scheme provides prisoners sentenced in California to a state prison term that

6  provides for the possibility of parole with "a constitutionally protected liberty interest in the

7  receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of

8  the Due Process Clause." Irons v. Carey, 505 F.3d 846, 850-51 (9th Cir. 2007) (citing Sass v.

9  Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910,

10  914 (9th Cir. 2003); McQuillion, 306 F.3d at 903; and Allen, 482 U.S. at 377-78 (quoting

11  Greenholtz, 442 U.S. at 12)).  Accordingly, this court must examine whether the deprivation of

12  petitioner's liberty interest in this case violated due process.

13         It has been clearly established by the United States Supreme Court "that a parole

14  board's decision deprives a prisoner of due process with respect to this interest if the board's

15  decision is not supported by 'some evidence in the record,' Sass, 461 F.3d at 1128-29 (citing

16  Superintendent v. Hill, 472 U.S. 445, 457 (1985)); see also Biggs, 334 F.3d at 915 (citing

17  McQuillion, 306 F.3d at 904), or is "otherwise arbitrary," Hill, 472 U.S. at 457.

18         "The 'some evidence' standard is minimally stringent," and a decision will be

19  upheld if there is any evidence in the record that could support the conclusion reached by the

20  fact-finder.  Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Cato v. Rushen, 824 F.2d

21  703, 705 (9th Cir. 1987)); Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).

22  However, "the evidence underlying the [ ] decision must have some indicia of reliability."

23  Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).  See also Perveler v.

24  Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992).  Determining whether the "some evidence"

25  standard is satisfied does not require examination of the entire record, independent assessment of

26  the credibility of witnesses, or the weighing of evidence.  Toussaint, 801 F.2d at 1105.  The

5

1   question is whether there is any reliable evidence in the record that could support the conclusion

2   reached.  Id.

3                    3)      Discussion

4                            a)      Circumstances of The Commitment Offense

5           With respect to the circumstances of the commitment offense the Board stated:

6           First of all the offense was carried out in a dispassionate manner,
            he shot the victim while he was asleep.  The offense was carried
7           out in a manner which demonstrates a callous disregard for human
            life.  The victim was shot two times with his own revolver.  And
8           the offense was carried out in an especially violent and callous
            manner.

9   /////

10  Answer, Ex. 2 at 18.  The Sierra County Superior Court found some evidence to support the

11  Board's conclusion.  Answer, Ex. 3 at 5-6.

12          The circumstances of the commitment offense are one of fifteen factors relating to

13  an inmate's unsuitability or suitability for parole under California law.  Cal. Code. Regs., tit. 15

14  § 2402(c)(1)-(d).  When denial is based on these circumstances the California courts have stated

15  that:

16          A prisoner's commitment offense may constitute a circumstance
            tending to show that a prisoner is presently too dangerous to be
17          found suitable for parole, but the denial of parole may be
            predicated on a prisoner's commitment offense only where the
18          Board can "point to factors beyond the minimum elements of the
            crime for which the inmate was committed" that demonstrate the
19          inmate will, at the time of the suitability hearing, present a danger
            to society if released.  [In re] Dannenberg, 34 Cal.4th [1061] at
20          1071, 23 Cal.Rptr.3d 417, 104 P.3d 783 (Cal.2005).  Factors
            beyond the minimum elements of the crime include, inter alia, that
21          "[t]he offense was carried out in a dispassionate and calculated
            manner," that "[t]he offense was carried out in a manner which
22          demonstrates an exceptionally callous disregard for human
            suffering," and that "[t]he motive for the crime is inexplicable or
23          very trivial in relation to the offense." Cal. Code. Regs., tit. 15
            § 2402(c)(1)(B), (D)-(E)."

24  /////

25  Irons, 505 F.3d at 852-53; see also In re Weider, 145 Cal.App.4th 570, 588 (2006) (to support

26  denial of parole, the "factors beyond the minimum elements of the crime" "must  be predicated

1   on "some evidence that the particular circumstances of [the prisoner's] crime-circumstances

2   beyond the minimum elements of his conviction-indicated exceptional callousness and cruelty

3   with trivial provocation, and thus suggested he remains a danger to public safety.")

4         Such circumstances may include "rehearsing the murder, executing of a sleeping

5   victim, stalking," id., or evidence that the defendant "acted with cold, calculated, dispassion, or

6   that he tormented, terrorized or injured [the victim] before deciding to shoot her; or that he

7   gratuitously increased or unnecessarily prolonged her pain and suffering." In re Smith, 114

8   Cal.App.4th at 367.

9         The relevant inquiry "is not merely whether an inmate's crime was especially

10  callous, or shockingly vicious or lethal, but whether the identified facts are probative to the

11  central issue of current dangerousness when considered in light of the full record before the

12  Board or the Governor." In re Lawrence, 44 Cal.4th 1181, 1221 (Cal. 2008); In re Dannenberg,

13  34 Cal. 4th at 1070-71.

14        After drinking with the victim earlier that day, petitioner returned to the victim's

15  campsite and shot him twice in the head while he slept.  Answer, Ex. 2 at 18-19.  The gun used

16  was a pistol petitioner had wanted to buy from the victim.  Id. at 18.  Petitioner at one time stated

17  that he shot the victim after thinking about it "quite extensively" because he reminded him of his

18  uncle or father.  Id. at 19.  At a different time petitioner stated he shot the victim because he

19  awoke while petitioner was stealing the pistol.  Id.

20        Petitioner executed a sleeping victim without any justification or provocation.

21  The execution was either calculated or done out of fear the victim would thwart his thievery.  In

22  either instance petitioner's actions could be described as cold, calculated or dispassionate.

23        The Board's conclusion that the circumstances of the commitment offense were

24  probative to the central issue of petitioner's current dangerousness when considered in light of

25  the full record before the Board is supported by some evidence.  With respect to petitioner's

26  argument that the Board relied solely on the unchanging factors of the circumstances of the

1  commitment offense this argument is without merit.

2         While a parole denial based solely on the circumstances of the commitment

3  offense can initially satisfy due process requirements, the continued reliance over time on

4  unchanging factors such as the circumstances of the commitment offense may result in a due

5  process violation.  Biggs, 334 F.3d at 916.  In Irons, the Ninth Circuit explained that Biggs

6  represents the law of the circuit that continued reliance on a prisoner's commitment offense or

7  conduct prior to imprisonment could result in a due process violation over time.  Irons, 505 F.3d

8  at 853.  Nevertheless, the court held that, given the egregiousness of the commitment offense,

9  due process was not violated when the Board deemed a prisoner unsuitable for parole prior to

10  expiration of his minimum term.  Id. at 846.

11         Petitioner was sentenced to a term of 17 years to life in 1988.  Answer, Ex. 2 at 4.

12  At the time of the 2004 hearing petitioner had not yet served his minimum term.  The Board

13  therefore would not have violated due process by finding petitioner unsuitable for parole based

14  solely on the circumstances of the commitment offense.  Nevertheless, the Board relied on much

15  more than the circumstances of the commitment offense.  One additional factor the board relied

16  on was petitioner's unstable social history.

17              b)    Unstable Social History

18         With respect to petitioner's unstable social history the Board stated:

19         The prisoner's previous record, he has a history of unstable and
   tumultuous relationships with others.  He had failed to profit from
20         society's previous attempts to correct his criminality.  Such
   attempts include adult probation and county jail time.  He had an
21         unstable social history, between the ages of three and 12 he was
   labeled uncontrollable and hyperactive, placed in 40 to 50 foster
22         homes after his mother was shot by his father.  He was given
   psychiatric medication.  On 10 to 12 occasions he had attempted
23         suicide.  He also had a history of drug abuse.  He used alcohol and
   marijuana.
24  /////

25  Answer, Ex. 2 at 19.  The Sierra County Superior Court found some evidence to support the

26  Board's conclusion.  Answer, Ex. 3 at 6-7.

1           An "unstable social history" is defined as a "history of unstable or tumultuous

2   relationships with others."  Cal. Code. Regs., tit. 15 § 2402(c)(3).  At the age of three petitioner

3   witnessed his father kill his mother.  Answer, Ex. 2 at 9.  Six months later he and his six siblings

4   were removed from the care of their stepfather due to abuse and neglect.  Id.  All seven of the

5   children were placed in separate shelters or foster homes.  Id.  Between the ages of three and

6   twelve petitioner was labeled "an uncontrollable and hyperactive child and was placed in 40 to

7   50 different foster homes or group homes."  Id.  Petitioner's "normal cycle" was to be placed in a

8   foster home, then a psychiatric ward, and then a new foster home.  Id.

9           After being emancipated petitioner "rode the Greyhound bus around the United

10  States and settled in San Francisco."  Id.  Petitioner attempted suicide ten or twelve times, with

11  attempts including ramming his head against a wall to fracture his skull, overdosing on

12  medication, and cutting the veins in his arms.  Id.  Petitioner once sought to find and kill his

13  father or uncle.  Id.  As an adult petitioner was convicted of disorderly conduct and third-degree

14  burglary.  Id. at 8.

15          The Board's conclusion regarding petitioner's unstable social history is supported

16  by some evidence.  In addition to his unstable social history, the Board relied on petitioner's

17  failure to upgrade vocationally.

18  /////

19          c)    Failure to Upgrade Vocationally

20          With respect to petitioner's failure to upgrade vocationally, the Board found that

21  he had not followed the Board's previous recommendation to upgrade vocationally and had not

22  obtained his GED.  Id. at 20.  The Sierra County Superior Court found some evidence to support

23  the Board's conclusion.  Answer, Ex. 3 at 8.

24          While the failure to upgrade vocationally or obtain a GED is not a stated factor

25  indicating unsuitability under California law the Board may consider "any other information

26  which bears on the prisoner's suitability for release." Cal. Code. Regs., tit. 15 § 2402(b).

9

1    Petitioner disputes the Board's conclusion arguing that he "was already

2 determined to be 'functionally illiterate' by the State of New York and was awarded SSI for his

3 disability." Petition at 25. Even assuming petitioner's continued receipt of disability benefits,

4 without sufficient vocational training or education it would be extremely difficult for petitioner

5 to adjust to life outside of prison. The more difficult the adjustment the more likely petitioner's

6 parole would be unsuccessful and the more likely that he would re-offend.

7    The Board's conclusion regarding petitioner's failure to upgrade vocationally is

8 supported by some evidence. In addition to his failure to upgrade vocationally, the Board also

9 relied on petitioner's failure to significantly participate in self-help.

10    d)    Failure to Sufficiently Participate in Self-Help

11    The Board found that petitioner had failed to "sufficiently participate[] in

12 beneficial self-help" noting that he had only returned to Alcoholics Anonymous in 2003 and had

13 not participated in any other self-help courses in the proceeding two years. Answer, Ex. 2 at 20.

14 The Sierra County Superior Court found some evidence to support the Board's conclusion.

15 Answer, Ex. 3 at 7.

16    While the failure to sufficiently participate in self-help programs is not a stated

17 factor indicating unsuitability under California law the Board may consider "any other

18 information which bears on the prisoner's suitability for release." Cal. Code. Regs., tit. 15 §

19 2402(b). Petitioner's lack of participation in self-help programs implies that his mental and

20 emotional state may not be significantly changed from when the commitment offense occurred,

21 raising a concern that petitioner was still currently dangerous. Indeed, petitioner's counselor

22 estimated that petitioner "would probably pose a moderate degree of threat to the public . . . if

23 released from prison." Answer, Ex. 2 at 11.

24    The Board's conclusion regarding petitioner's failure to sufficiently participate in

25 self-help is supported by some evidence.   In addition to his failure to sufficiently participate in

26 self-help, the Board also relied on petitioner's institutional behavior.

10

1

    e)      Institutional Behavior

2           The Board cited petitioner's institutional behavior as one factor supporting a

3 determination of unsuitability.  The Sierra County Superior Court found some evidence to

4 support this conclusion.  Answer, Ex. 3 at 7.

5           Under California law, institutional behavior that evidences "serious misconduct"

6 at any time is a circumstance tending to show unsuitability.  See Cal. Code Regs. tit. 15, §

7 2402(c)(6).  Petitioner had at least four 115[1] violations during his incarceration.  Answer, Ex. 2

8 at 10.  He received two 115s for failure to report, one for self-mutilation and one in 2002 for

9 being out of bounds.  Id.  Petitioner had also received two 128s[2], the last one of which was

10 received on October 29, 2003, for an un-excused absence.  Id.

11          The Board's conclusion regarding petitioner's institutional behavior is supported

12 by some evidence.  In addition to his institutional behavior, the Board also relied on petitioner's

13 lack of an adequate parol plan to find him unsuitable for parole.

14          f)      Lack of an Adequate Parole Plan

15          In finding petitioner lacked an adequate parole plan the Board stated:

16      The prisoner's parole plans are not realistic.  He does not have a
        viable residential plan.  He does not have a viable employment
17      plan.  He had no support letters and apparently has no support from
        the community.  He has no contact on the outside to assist him
18      with his parole.  His family will not answer his letters or phone
        calls.

19 /////

20 Answer, Ex. 2 at 20.  The Sierra County Superior Court found that the "majority" of the Board's

21 conclusion was supported by some evidence, noting that petitioner attached to his petition letters

22 of support from his cell-mate's family.  Answer, Ex. 3 at 8-9.

23

24      [1] A 115 "Rules Violation Report" documents misconduct "believed to be a violation of
25 law or [that] is not minor in nature ."  15 Cal. Code Regs. § 3312(a)(3).

26      [2] A 128 is issued when similar minor misconduct recurs after verbal counseling or if
documentation of minor misconduct is needed.  15 Cal. Code Regs. § 3312(a)(3).

11

1      While the lack of an adequate parole plan is not a stated factor indicating

2  unsuitability under California law the Board may consider "any other information which bears

3  on the prisoner's suitability for release." Cal. Code. Regs., tit. 15 § 2402(b).  Making the

4  successful transition from life in prison to life on the outside as a law-abiding citizen is a

5  difficult achievement without the added hurdle of being without any prospects for housing or

6  employment.  Regardless of whatever evidence petitioner presented along with his state court

7  petition, or whatever arrangements petitioner could make after he was granted parole, at the time

8  of the hearing he had no plans for employment or residence or support from anyone outside of

9  prison.

10      The Board's conclusion that petitioner lacked an adequate parole plan is

11  supported by some evidence.

12  V.      <u>CONCLUSION</u>

13      The facts of petitioner's commitment offense were probative to his current

14  dangerousness when considered in light of the full record before the Board.  That record

15  included petitioner's unstable social history, his failure to upgrade vocationally, his failure to

16  sufficiently participate in self-help, his institutional behavior, and his lack of an adequate parole

17  plan.

18      Petitioner's commitment offense was a cold, dispassionate execution which

19  demonstrated a callous disregard for human life without any provocation or justification.

20  Petitioner executed the victim because he reminded him of his father or because he feared the

21  victim would thwart his robbery attempt.  In either instance the victim's death was brutal, cold,

22  and senseless.

23      Petitioner's past is almost as troubling.  He witnessed his father kill his mother,

24  was removed from his family, and was moved around to at least 40 different placements.  He

25  repeatedly required psychiatric care and attempted suicide on multiple occasions.

26      While in custody petitioner received multiple 115s and had not demonstrated

1  sufficient progress in self-help programs, vocational training, or education.  At the time of the

2  hearing he lacked any semblance of a parole plan for either gainful employment or a place to

3  live.  Further he had no support from anyone outside the prison.

4          Based on this record there was some evidence to support the Board's conclusion

5  that at the time of the hearing petitioner was currently dangerous and unsuitable for parole.  The

6  opinion of the Sierra County Superior Court affirming the finding of some evidence was

7  therefore not unreasonable.  Petitioner's right to due process was not violated and he is not

8  entitled to relief on this claim.

9          Accordingly, IT IS HEREBY RECOMMENDED that petitioner's petition for a

10  writ of habeas corpus be denied.

11          These findings and recommendations are submitted to the United States District

12  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

13  days after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

16  shall be served and filed within ten days after service of the objections.  The parties are advised

17  that failure to file objections within the specified time may waive the right to appeal the District

18  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19  DATED: July 20, 2009

20                                          CHARLENE H. SORRENTINO
                                            UNITED STATES MAGISTRATE JUDGE
21

22

23

24

25

26

13